# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK MOORE, JR., | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 4:13CV0184 AGF |
| IAN WALLACE, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition, as amended, of Missouri state prisoner Patrick Moore Jr., for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury of two counts of assault in the first degree, two counts of armed criminal action, and one count of unlawful use of a weapon. The charges arose out of a shooting incident in a predominately African American neighborhood, in which a white police officer was shot at by Petitioner, who is African American. Petitioner was sentenced as a prior and persistent offender to five consecutive terms of life imprisonment. For federal habeas relief he argues that his constitutional rights were violated by (1) the exclusion of jurors based on race; (2) defense counsel's failure to preserve for review a claim that jurors were excluded on the basis of gender; and (3) the use by State's witnesses of Petitioner's nickname, "Trigg." For the reasons set forth below, habeas relief will be denied.

# BACKGROUND

**Trial**

The trial court denied Petitioner's motion in limine to preclude the State from referring to Petitioner's nickname "Trigg," allowing the State to refer to the nickname "in voir dire or otherwise." The court stated that Petitioner's objection that use of the nickname was "highly prejudicial" would "run to the use of the term." (Resp. Ex. A at 28.)

During voir dire, the State asked the venirepanel if anyone was familiar with the block on which the incident occurred, and several members of the panel indicated they were. The State used four of its six peremptory challenges to strike four female African American venirepersons: Venirepersons Lyles, Campbell, McCloud, and Fields; and its two peremptory challenges directed to the panel of potential alternate jurors to strike two female African Americans: Guyton and Blue. Petitioner raised a *Batson*[1] challenge, and upon inquiry by the court, the State asserted that it struck Lyles, Campbell, and Guyton because they expressed personal familiarity with the block where the shooting had occurred. The State explained that the lighting on the block and whether the shooter could be seen from a certain vantage point were important issues in the case, and also that several of the shooters were still unidentified and the names of people who lived on the block in question could come up or such people might testify at the trial and the

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986), held that that the Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from exercising peremptory challenges on the basis of race. In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), the holding was expanded to prohibit excluding jurors based on gender.

venirepersons who were familiar with the area might recognize them. The State stated further that it was concerned that Lyles had two family members who had been arrested, one for assault; and that Guyton had read newspaper articles about the incident.

Petitioner argued that the striking of veniremembers based on familiarity with an almost completely African American area was "essentially not a race-neutral reason," but rather "a racial reason in disguise." The court asked Petitioner's counsel whether he detected any white venirepersons who were similarly-situated to the African Americans struck by the State and counsel responded that he did not.

After all peremptory strikes were discussed, the trial court stated as follows:

> [T]he State used six of its peremptory challenges against black venireman [sic]. The defense used eight of its peremptory challenges against white veniremen. The jury as tentatively composed . . . consists of eight white, three black, and one of Asian descent. . . . [I]n keeping with the Court's experience with State's counsel in numerous trials and in keeping with all the circumstances of the case and the voir dire and the responses of the veniremen, the Court finds that the State has articulated legitimate, nondiscriminatory reasons. . . . [T]he Court finds that the State's counsel is credible and that the explanations establish, in the Court's mind, that there were no invidiously discriminatory reasons at work in the exercise of the peremptory challenges by the State.

*Id*. at 200-01. The court overruled all objections to both sides' strikes and sat the jury "as it was tentatively composed." *Id*. at 201.

The evidence at trial established that in the early morning hours of September 26, 2006, two undercover police officers, Justin Johnson and Robert Trim, decided to follow a Ford Impala that was weaving on the road. After a few blocks, the driver of the Impala stopped the car in the middle of the road, got out, yelled at someone on the sidewalk, and fired multiple time at the two officers. It sounded to Officer Johnson that shots were

3

being fired from different caliber weapons. As the officers tried to retreat, a shot shattered the front window of their car and struck Officer Johnson in the shoulder. The Impala drove off and another team of officers came across the vehicle, abandoned, after it had crashed into a light pole. Multiple shell casings and bullet fragments, from guns of various calibers, were recovered from the scene, from Officers Johnson and Trim's car, and from Officer Johnson's shoulder, and various items were recovered from the abandoned Impala. Two of the State's witnesses knew Petitioner only as Trigg and referred to him by that nickname; other witnesses testified that they knew Petitioner more familiarly as Trigg than his given name. There were no questions, testimony, or argument at trial about the origin of the nickname.

Petitioner does not challenge the sufficiency of the evidence to support the convictions. Indeed, the evidence against him was overwhelming, including Officer Johnson's identification of Petitioner in a photographic and a physical line-up as the man he saw get out of the Impala and shoot at him; Petitioner's fingerprints and DNA found on items in the Impala; evidence that Petitioner was in possession of the Impala at the time in question; the testimony of a State's witness that several hours after the shooting, Petitioner told her he had been involved in a shooting incident with the police in which several people had fired guns; and ballistic evidence tying Petitioner to a gun of the caliber used in the shooting incident.

**Direct Appeal**

On direct appeal, Petitioner raised two grounds of trial court error. He first argued that the trial court erred in overruling Petitioner's *Batson* challenge as to the State's

4

peremptory strikes of Campbell and Guyton, because the State's proffered reason, familiarity with the area where the crimes took place, was pretextual as almost all people who lived in that area were African American. The appellate court rejected this argument, concluding that "familiarity with the area of a crime scene, particularly when there are as yet unidentified co-conspirators, is a legitimate, race-neutral reason for the State to strike a potential juror." (Resp. Ex. G at 7.)

Petitioner's second point on appeal was that the trial court erred in allowing the prosecutor to refer to Petitioner as "Trigg" because it was similar to the word "trigger," suggesting that he had an inclination to use a gun. The Missouri Court of Appeals rejected this claim as well, concluding that even if the trial court had erred in allowing use of the nickname at trial, Petitioner failed to make the requisite showing of prejudice for the error to entitle him to a new trial, in light of the overwhelming evidence of guilt. *Id*. at 9.

**State Postconviction Proceedings**

On November 28, 2011, the trial court denied Petitioner's motion for state postconviction relief, without an evidentiary hearing. The only issue raised on appeal from that decision was that the motion court erred in denying without an evidentiary hearing Petitioner's claim that defense counsel was ineffective in failing to object to the State's use of peremptory strikes against Venirepersons Lyles, Campbell, and Guyton in a discriminatory manner based on gender. (Resp. Ex. I.)

Petitioner had argued in his postconviction motion that the reason given for striking these women – familiarity with the crime area – applied equally to a male

5

venireperson, Venireperson Shell. The trial court rejected this claim, concluding that Shell was not similarly situated to the female venirepersons because, unlike Lyles, Campbell, and Guyton, he did not indicate that he personally was familiar with the crime scene, just that he knew someone who lived in that area.

On appeal, Petitioner argued that an evidentiary hearing was necessary to assess the prejudice to him due to the exclusion of Lyles, Campbell, and Guyton from the jury. The Missouri Court of Appeals affirmed the motion court, concluding that in light of the evidence in the record of the gender-neutral explanations supporting the State's exercise of its peremptory strikes on Lyles, Campbell, and Guyton, any gender-based *Batson* challenge would have been meritless, refuting Petitioner's claim of ineffective assistance of defense counsel. (Resp. Ex. K.)

**Federal Habeas Petition**

As noted above, for federal habeas relief Petitioner argues that his constitutional rights were violated by (1) the exclusion of jurors based on race; (2) defense counsel's failure to preserve for review a claim that jurors were excluded on the basis of gender; and (3) the use by State's witnesses of Petitioner's nickname, "Trigg." The State argues that Petitioner's *Batson* claim should be limited to those peremptory strikes challenged on direct appeal, and that Petitioner's claims regarding those strikes, as well as his other properly-preserved claims, were reasonably adjudicated by the state courts; thus, according to the State, habeas relief should be denied.

# DISCUSSION

## Standard of Review

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> "[C]learly established Federal law" for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions. And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citations omitted). "This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Id*. (citation omitted).

## Race-Based *Batson* Claim

As noted above, *Batson* held that the Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from exercising peremptory challenges on the basis of

7

race. 476 U.S. at 89. When adjudicating a *Batson* claim, trial courts are to follow a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.
> The opponent of the strike bears the burden of persuasion regarding racial motivation, and a trial court finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is entitled to great deference.

*Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (citations omitted).

"If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination." *Hernandez v. New York*, 500 U.S. 352, 363 (1991).

> A trial court is best situated to evaluate both the words and the demeanor of jurors who are peremptorily challenged, as well as the credibility of the prosecutor who exercised those strikes. As we have said, these determinations of credibility and demeanor lie peculiarly within a trial judge's province, and in the absence of exceptional circumstances, we [will] defer to the trial court.

*Davis*, 135 S. Ct. at 2201 (citation omitted).

As an initial matter, the Court agrees with the State that only the strikes of Campbell and Guyton are preserved for this Court's habeas review. *See Williams v. Groose,* 77 F.3d 259, 262 (8th Cir. 1996) (holding that because the habeas petitioner did not challenge the peremptory removal of a certain prospective juror in his direct state

8

court appeal, the *Batson* claim challenging this individual's removal was procedurally defaulted); *Troupe v. Groose*, 72 F.3d 75, 76 (8th Cir. 1995) (same). Petitioner has not asserted cause or prejudice to excuse his default, or that a fundamental miscarriage of justice would occur if the Court does not review his race-based *Batson* claim with respect to Lyles. Thus, the Court will not consider that claim. *See Williams*, 77 F.3d at 262.

With respect to the race-based *Batson* claim involving Venirepersons Campbell and Guyton, it is undisputed that the crimes took place in a predominantly African American neighborhood. Exclusion of jurors based solely on their personal familiarity with this area could be a pretext for discrimination. However, the State's explanation for striking Campbell and Guyton went beyond a cursory statement that they were familiar with the scene. The State explained why in this case the physical attributes of the scene were important, and further that Campbell and Guyton might recognize potential witnesses due to these venirepersons' personal familiarity with the scene. This Court sees no basis for finding unreasonable the trial court's acceptance of the proffered race-neutral reason as legitimate, or the trial court's credibility determination. *See United States v. Briscoe*, 896 F.2d 1476, 1488-89 (7th Cir. 1990) (holding that the government articulated a legitimate, race-neutral explanation for the exercise of a peremptory challenge against an African American venireperson who, in the past five years, had resided in an African American neighborhood close to the addresses of two individuals who were scheduled to testify); *see also United States v. Adams*, 604 F.3d 596, 601 (8th Cir. 2010) (rejecting a *Batson* challenge where the district court had found that the prosecutors were credible in their assertion that they used a peremptory strike to remove

9

an African American venireperson due to his status as a renter indicating a lack of attachment to the community, even though African Americans in the area were more likely to rent than own their homes); *Scott v. Krammer*, 516 F. App'x 612, 614 (9th Cir. 2013) (holding on federal habeas review that the state court's determination that the prosecutor's use of peremptory challenges to strike African American venirepersons based on their negative experiences with law enforcement did not violate *Batson*, despite the petitioner's contention that prosecutor's facially race-neutral reason was a proxy for race).

In sum, upon review of the entire record, including the transcript of voir dire, the Court concludes that Petitioner has failed to present the required evidence demonstrating that the state courts' denial of Petitioner's race-based *Batson* claim with respect to Campbell and Guyton resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1), (2).

**<u>Ineffective Assistance of Counsel Claim</u>**

Petitioner claims that defense counsel was ineffective for failing to raise a *Batson* claim based on gender. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish a claim of ineffective assistance of counsel, a habeas petitioner must show that his counsel "made errors so serious that counsel was not functioning as the

'counsel' guaranteed the petitioner by the Sixth Amendment." *Id*. at 687. Judicial scrutiny of counsel's performance is "highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"It is well-established that peremptory challenges cannot be lawfully exercised against potential jurors of one [gender] unless potential jurors of [the other gender] with comparable characteristics are also challenged." *Hill v. City of St. Louis*, No. 4:14CV1813 RWS, 2015 WL 224998, at *4 (E.D. Mo. Jan. 15, 2015) (quoting *Devose v. Norris*, 53 F.3d 201, 204 (8th Cir. 1995)). Here, this Court's review of the record convinces the Court that the Missouri Court of Appeals did not unreasonably adjudicate Petitioner's ineffective assistance claim. It was not unreasonable for the appellate court to find that Venireperson Shell was not similarly situated to the female venirepersons who were stricken for the gender-neutral reason of familiarity with the scene of the crime. As the state appellate court noted, the relevant female venirepersons had personal knowledge of the crime area, whereas Shell did not. Thus this claim is denied. *See Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (rejecting ineffective-assistance-of-counsel claim based on defense counsel's failure to object to a peremptory strike under *Batson* where the petitioner did not show that had counsel objected, the challenge would have been successful); *Barnett v. Roper*, No. 4:03CV00614 ERW, 2006 WL 2475036, at *57-58 (E.D. Mo. Aug. 24, 2006) (concluding that state court's findings

11

that male venirepersons were not similarly situated to female veneriepersons who were peremptorily stricken by the prosecution were reasonable), *aff'd*, 541 F.3d 804 (8th Cir. 2008).

**Due Process Claim – Reference at Trial to Petitioner's Nickname**

"A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998) (citation omitted). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996).

Here, the Court concludes that reference by State's witnesses to Petitioner as Trigg did not deprive him of a fair trial. The nickname was the name by which the witnesses knew Petitioner. The nickname is not in and of itself so inherently inflammatory, even in the context of a shooting case, and importantly, there were no questions, testimony, or argument as to how Petitioner acquired this nickname. In addition, the evidence of Petitioner's guilt was strong. Thus, the state appellate court's adjudication of this claim was reasonable. *See Nettles v. Roper*, No. 4:03-CV-68 CAS, 2006 WL 852391, at *19 (E.D. Mo. Mar. 30, 2006) (rejecting habeas due process claim based on use of the petitioner's nickname "Homicide," in a murder trial, by a witness who knew him by that nickname where the prosecutor did not attempt to draw attention to the fact that the witness had mentioned the nickname); *Crowder v. Green*, No. 05 CV 2556 (ARR), 2005

WL 2678811, at *4 (E.D.N.Y. Oct. 20, 2005) (same in a murder case in which the prosecution repeatedly used petitioner's nickname "Killer").

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of Petitioner's claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (setting forth the standard for issuing a Certificate of Appealability).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Patrick Moore, Jr., for a writ of habeas corpus relief is **DENIED**.

A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of February, 2016.